UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALAN FUQUA,

                Plaintiff,                Case No. 08-12956

vs.                                      DISTRICT JUDGE DENISE PAGE HOOD
                                       MAGISTRATE JUDGE STEVEN D. PEPE
DENNIS STRAUB, *et al.*,

                Defendant(s).
_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (DKT. #23)**

This is a *pro se* prisoner lawsuit under 42 U.S.C. § 1983 alleging violations of the First, Fifth, and Fourteenth Amendments. At the time of the initial incident, Plaintiff was incarcerated in Manistee, Michigan at Oaks Correctional Facility ("ECF") of the Michigan Department of Corrections ("MDOC"). He was subsequently transferred to Standish Maximum Correctional Facility ("SMF"), and is currently located at the Saginaw Correctional Facility ("SRF"), both of which are part of the MDOC. Plaintiff alleges that, while incarcerated at ECF, Defendants violated his rights by placing him in temporary segregation without notice and hearing, and subsequently increasing his security level absent a formal administrative hearing. He also alleges that certain Defendants at ECF failed to ensure that his mail followed him after he was transferred from the facility, resulting in Plaintiff's non-receipt of the Michigan Supreme Court's order denying his application for leave to appeal his criminal conviction. Plaintiff also alleges that Defendants at SMF violated his rights by failing to fully investigate his grievances. Plaintiff seeks in excess of $1.4 million in compensatory and punitive damages among other claims for

1

relief (Complaint, p. 24, 25).

On September 19, 2008, Defendants moved for summary judgment pursuant to Fed. R. Civ. P. 56(b) asserting failure to exhaust administrative remedies, qualified immunity, and immunity under the Eleventh Amendment (Dkt. #23).  All pre-trial matters were referred under 28 U.S.C. § 636(b) (Dkt. #6).  For the reasons stated below, it is **RECOMMENDED** that Defendants' motion for summary judgment be **GRANTED**.

**I.    BACKGROUND**

On the morning of June 15, 2005, an incident occurred outside the dining hall at ECF involving a fight and stabbing that had been planned by gang members.  The following day, Plaintiff filed a supplement to his timely application for leave to appeal in the Michigan Supreme Court challenging his conviction and sentence.  Later that day, as a result of the investigation of the June 15 incident, Plaintiff was identified as a possible participant, placed in temporary segregation and subsequently had his security level increased from IV (close custody) to V (maximum security).  On June 21, 2005, Plaintiff was transferred to SMF in light of his increased security level.

Defendants are various staff members of ECF, SMF, and MDOC personnel.  Defendants Straub, Caruso and Armstrong were and are employees at the MDOC offices in Lansing, Michigan.  Defendants Curtin, MacEachern, Pratt and Bulerski (Brinkley) were, at the time relative to this complaint, employed at ECF.  MacEachern is currently MDOC's administrative assistant for Internal Affairs, and Pratt is currently warden at Pugsley Correctional Facility.  At the time relevant to this complaint, Defendants Birkett, Balcarcel and Werener were the Warden, Deputy Warden and Assistant Resident Unit Supervisor at SMF, respectively.  Defendant

Balcarcel is currently Deputy Warden at Pine River Correctional Facility.

Between June, 2005 and August, 2007 Plaintiff filed four grievances that are relevant to this complaint, all of which received Step III responses (Dkt. #23, Grievance Inquiry printout, Ex. 1).  Grievance SRF-2007-11-2758-14a, filed November 25, 2007, is regarding an incident that does not apply to this complaint, and will not be addressed.[1]

On June 18, 2005, Plaintiff filed Grievance No. ECF-2005-06-1290-28b, although he neglected to state against whom the grievance was filed (Complaint, Ex. B).  The grievance simply restates the events of June 15, 2005, and seeks clarification as to why Plaintiff was placed in temporary segregation.  The Step I response noted that Plaintiff failed to cite a specific violation of policy, and therefore the issue was too vague (*id*.).  The Step II response stated the determination at Step I was correct (Dkt. #23, Ex. 5, p. 3).  The Step III response stated that the Step I and Step II rejections were correct, and Plaintiff had not presented any information to demonstrate an error in the determination (*id.* at 4).

On June 26, 2005, Plaintiff filed Grievance No. SMF-2005-06-1255-21c, against Wendy Bulerski (Brinkley) alleging that she incorrectly reclassified Plaintiff's security level from IV to V, which required a transfer to a maximum security facility (Complaint, Ex. D).  The Step I response indicated that Plaintiff's security level had been increased, and he was transferred from ECF because he was identified as a possible participant in a number of assaults at ECF in June, 2005 (*id.*).  Both the Step II and Step III responses state the Step I response adequately addressed the grievance (Complaint, Ex. D-2; Dkt. #23, Ex. 6, p. 5).

---

[1] Plaintiff was denied access to the Law Library at SRF on November 19, 2007.  Plaintiff agrees that this grievance is in no way related to the current complaint (Dkt. #27, p. 11).

On August 31, 2006, Plaintiff filed Grievance No. SRF-2006-09-1154-28b requesting a hearing regarding the information contained in the transfer order from ECF (Complaint, Ex. N). The Step I response rejected the grievance as both vague and untimely (*id.*). Both the Step II and Step III responses state the Step I response adequately addressed the grievance (Dkt. #23, Ex. 4, pp. 12-13).

On August 16, 2007, Plaintiff filed Grievance No. ECF-2007-08-3882-28e against the Warden (Defendant Curtin), Business Manager, Mail Room Supervisor, and Mail Room employee at ECF alleging they failed to forward his mail when he was transferred from ECF, which resulted in his non-receipt of the Michigan Supreme Court's order denying his application for leave to appeal his criminal conviction (Complaint, Ex. V). The Step I response rejected the grievance as untimely, as it dated back to an incident that allegedly occurred in 2005 (*id.*). Both the Step II and Step III responses state the Step I response adequately addressed the grievance (Dkt. #23, Ex. 3, pp. 25-26).

**II.    ANALYSIS**

    **A.    Legal Standards**

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). *See also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the

Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Moreover, when a motion for summary judgment is filed, the adverse party may not merely rely "upon the mere allegations or denials of the adverse party's pleading, but . . . by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B. Factual Analysis

#### 1. *Exhaustion*

Under the Prisoner Litigation Reform Act ("PLRA"), a prison inmate cannot maintain a civil rights action challenging prison conditions if he did not first exhaust "such administrative remedies as are available." As noted above, the PLRA requires a prisoner to follow the state corrections system's procedures and *properly* exhaust all administrative remedies before he may bring a cause of action in federal court. *Woodford v. Ngo*, 548 U.S. 81 (2006). Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules."

*Id.* at 90.  The *Woodford* Court explained:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Id.* at 95.  Thus, an untimely or otherwise improper grievance, even though appealed through all steps of a grievance procedure, does not fulfill the PLRA exhaustion requirement.

Prisoners at MDOC facilities are given the right to "[seek] redress for alleged violations of policy and procedure or unsatisfactory conditions," but prisoners making grievances must follow certain rules and deadlines.  Policy Directive Preamble.  These requirements are laid out in MDOC Policy Directive, Prisoner/Parolee Grievances (the "Policy Directive" or "PD").  "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).  The MDOC has specific administrative procedures that prisoners must follow to exhaust their administrative remedies.

MDOC Policy Directive 03.02.130 lays out a three-step process that prisoners must complete before they are deemed to have exhausted their claims (Dkt. #23, Ex. 7, MDOC PD 03.02.130 (Effective December 19, 2003)).  The Policy Directive first requires that, within two

6

business days of becoming aware of a grievable issue, a prisoner must first make an informal attempt to resolve it, unless he is prevented from doing so by circumstances outside of his control. PD § R. If he is dissatisfied with the result of this attempt, he may proceed to Step I of the grievance process. On a form supplied by MDOC, the prisoner must briefly describe the facts of the issue being grieved. PD § T. This form must be filed with a designated Grievance Coordinator within five business days of the prisoner's informal attempt at resolution. PD § X.

If the prisoner is dissatisfied with the Step I response, he may appeal to Step II by obtaining an appeal form within five business days of the response and submitting the appeal within five business days of obtaining the form. PD § DD. The Step II respondent is designated by the Policy Directive. PD § FF. If the prisoner is still dissatisfied after receiving the Step II response, he may appeal to Step III using the same appeal form. The Prisoner Affairs Section, on behalf of the MDOC Director, is the respondent for Step III appeals.

Plaintiff claims that he has exhausted his administrative remedies regarding the four grievances at issue (ECF-2005-06-1290-28b, SMF-2005-06-1266-21c, SRF-2006-09-1154-28b, and ECF-2007-08-3882-28e). It is undisputed that Plaintiff pursued all four grievances through Step III of the grievance process, yet only one, SMF-2005-06-1266-21c, was not rejected at Step I for being either untimely, vague or both. Section G of PD 03.02.130 authorizes the Grievance Coordinator to reject a grievance if it is vague or untimely.

Plaintiff accepts as true the necessity of exhausting administrative remedies before filing suit in federal court under the PLRA (Dkt. #27, p. 10). Plaintiff points out, however, that contrary to the Defendants' assertion that an untimely grievance leaves an issue unexhausted, *Thomas v. Woolum*, 337 F.3d 720 (6th Cir. 2003) states:

7

> a prisoner who has presented his or her grievance through one complete round of the prison process has exhausted the available administrative remedies under 42 U.S.C. § 1997e(a), regardless of whether the prisoner complied with the grievance system's procedural requirements.

*Id.* at 733.  Yet, *Thomas* was subsequently overruled by *Woodford*, which holds that an untimely or otherwise improper grievance, even if appealed through all steps of a grievance procedure, does not fulfill the PLRA exhaustion requirement.  548 U.S. at 95.

Plaintiff further argues that *Thomas* was controlling law when he filed this action and that *Woodford* should not be applied retroactively.  When a court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule."  *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 97 (1993).  Because the Supreme Court applied the exhaustion rule announced in *Woodford* to the *Woodford* litigants, *see Woodford*, 548 U.S. at 103, *Harper* mandates the application of that rule to all cases pending as of June 22, 2006, the date *Woodford* was decided.  The present case was filed on July 10, 2008.  Accordingly, it is proper to apply the holding in *Woodford* to the present case.

Because Plaintiff was on notice that grievances ECF-2005-06-1290-28b, SRF-2006-09-1154-28b, and ECF-2007-08-3882-28e had been rejected at Step I due to procedural errors and in accordance with PD 03.02.103, he cannot now claim exhaustion of those grievances. Plaintiff's grievance SMF-2005-06-1266-21c is properly exhausted, but only as to Defendant Bulerski (Brinkley), because she is the only Defendant named in the grievance.  Plaintiff has not exhausted his administrative remedies against Defendants Straub, Caruso, Armstrong, Curtin,

Birkett, Werner, Pratt, Balcarcel and MacEachern. His claims against Counselor Wendy Bulerski (Brinkley) involve his reclassification from Level IV to V and the resulting transfer, a very vague retaliation claim, and equal protection claim.[2]

### 2. *Plaintiff's Due Process Claim*

The Due Process Clause of the Fourteenth Amendment states that no State shall "deprive any person of life, liberty, or property, without due process of law." Procedural due process questions for violation of a liberty interest first ask if there is a liberty interest that has been interfered with by the State. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571 (1972). "The types of interests that constitute 'liberty'. . . for Fourteenth Amendment purposes are not unlimited; the interest must rise to more than 'an abstract need or desire,' *Kentucky Dept of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) (quoting *Board of Regents v. Roth*, 408 U.S. at 577), and must be based on more than 'a unilateral hope.'" *Thompson*, 490 U.S. at 460 (quoting *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981)). In evaluating a claimed liberty interest by prison inmates, courts are mindful that imprisonment necessarily "carries with it the circumscription or loss of many significant rights." *Hudson v. Palmer*, 468 U.S. 517, 524 (1984). The "curtailment of certain rights is necessary, as a practical matter, to accommodate a myriad of 'institutional needs and objectives' of prison facilities, chief among which is internal security." *Id*. at 524 (internal citations omitted). Accordingly, not every "action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause. . . ." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

---

[2] Plaintiff's access to the Courts claim involves other defendants against whom he has not exhausted his claims.

While incarcerated, prisoners retain a "residuum of constitutionally protected liberty," *Thompson*, 490 U.S. at 466 (Marshall, J., dissenting), that emanates from two discrete sources: (1) state law can establish a protectible liberty interest, or (2) the Constitution can create a liberty interest when a condition or restraint is so egregious as to implicate the Due Process Clause itself. *See Wilkinson v. Austin*, 545 U.S. 209 (2005).

The Due Process Clause is not implicated when a prisoner is transferred from one institution to another, as a prisoner has no constitutional right to be housed in a particular institution. *Meachum v. Fano*, 427 U.S. 215 (1976); *Olim v. Wakinekona*, 461 U.S. 238 (1983). After a valid conviction, a criminal defendant is constitutionally deprived of his liberty interests such that the State may confine him in any of its prisons. *Meachum*, 427 U.S. at 224. "[A]n inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State." *Olim*, 461 U.S. at 245.

Plaintiff relies on the Sixth Circuit 1993 decision of *Howard v. Grinage*, 6 F.3d 410, 412 (6th Cir. 1993), for the proposition that by using mandatory language relating to the security classification of prisoners, the State creates a liberty interest in that classification.

*Howard* involved an old version of Rule 791.4401 of the Michigan Administrative Code relating to the security classification of prisoners, which stated, in relevant part: "A prisoner being considered for reclassification to a more restrictive level of security, except segregation, is entitled to an opportunity for an hearing...."[3] *Howard*, 6 F.3d at 413. In its decision, the Court quoted *Hewitt v. Helms*, 459 U.S. 460 (1983) stating: "'on balance we are persuaded that the

---

[3] This Rule was revised in 2002, and it currently states that "[a] prisoner who objects to a reclassification decision may file a grievance." Mich. Admin. Code R. 791.4401(4).

10

repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest.'" *Id.* at 412. The Court held that "an increase in plaintiff's security classification level without notice and hearing could under certain circumstances constitute a violation of plaintiff's liberty interests." *Id.* at 413.

Although *Howard* has never been explicitly overruled, the basis for its decision has been significantly eroded. In *Sandin*, the Supreme Court expressly overruled the *Hewitt* methodology because it produced two undesirable effects. First, it created "disincentives for States to codify prison management procedures in the interest of uniform treatment." *Sandin*, 515 U.S. at 482. Second, it "led to the involvement of the federal courts in the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone." *Id.* The *Sandin* Court put forth a new test which holds that prisoners' liberty interests are generally limited to "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Since *Sandin*, the Sixth Circuit has consistently applied this test. A change in security classification to a higher level of security, with nothing more, is not the type of atypical and significant deprivation in which an inmate might have a liberty interest. *See Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995); *Mackey v. Dyke*, 111 F.3d 460, (6th Cir. 1997); *Harbin-Bey v. Rutter*, 420 F.3d 571 (6th Cir. 2005). Accordingly, Plaintiff's Due Process rights were not violated when he was transferred to another facility following his increased security level.

### 3.     *Plaintiff's Retaliation Claim*

Most of Plaintiff's retaliation claims are directed against those who delayed his receipt of the Michigan Supreme Court order and the related procedural default, which claims were not exhausted. See e.g. Complaint ¶¶ 61, 64, 70, 82, 83, 89. Paragraph 78 of the Complaint, however, refers to "[d]efendants [who] retaliated against plaintiff based on his religious beliefs (Islamic) and race." Assuming this includes Defendant Bulerski (Brinkley) it is too conclusory and lacking in sufficient factual allegations to state a claim for retaliation under *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999). "[M]ore than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements. In practice, a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (internal citations and quotation marks omitted). *See also Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.").

### 4.     *Plaintiff's Equal Protection Claim*

Plaintiff claims that his right to equal protection was violated when he was placed in temporary segregation, subjected to an increase in his security level, and transferred to another facility. In order to state an equal protection claim based on discriminatory acts, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of his or her membership in a protected class. *See Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990). Moreover, conclusory allegations of unconstitutional conduct are insufficient to state a claim under § 1983–some factual basis for the claim must be set forth in the pleadings.

*Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996). Accordingly, to be in violation of the Constitution, unequal enforcement of the laws must be based upon "race, religion, or some other arbitrary classification", and "there must be an affirmative showing of clear and intentional discrimination." *Butcher v. Department of Natural Resources*, 158 Mich. App. 704, 708 (1987).

In Plaintiff's Complaint, he avers that he is black and of the Islamic faith (Complaint, ¶ 26). Yet, he has only made conclusory assertions that Defendants discriminated against him based on his religious beliefs and race (Complaint, ¶¶ 78, 80, 83, 87). Plaintiff has not provided any factual basis for his allegations of discrimination. Accordingly, Plaintiff's equal protection claim fails as a matter of law.

     **5.**     *Qualified Immunity*

Government officials who perform discretionary functions are also generally entitled to qualified immunity from individual liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is an affirmative defense and the plaintiff need not anticipate it in the complaint. *Gomez v. Toledo*, 446, U.S. 635, 640 (1980). Once a defense of qualified immunity is asserted, the plaintiff must respond with "specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity." *Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir. 1995). A Court may find it beneficial to answer two questions when ruling upon a qualified immunity issue. One inquiry is whether, considered in

13

the light most favorable to the party claiming injury, the facts establish that the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). The other question is whether that constitutional right was clearly established at the time. *Id.*; *Summar v. Bennet*, 1957 F.3d 1054, 1058 (6th Cir. 1998). Under *Saucier*, it was mandated that these questions be addressed in order, but that requirement has since been relaxed. *See Pearson v. Callahan*, ---- U.S. ----, 129 S.Ct. 808, 818 (2009) ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.")

As explained above, the only Defendant against whom Plaintiff has exhausted his administrative remedies is Defendant Bulerski (Brinkley), so the qualified immunity analysis only applies to her. Here, it must be determined whether the facts alleged show the Defendant's conduct violated a constitutional right, or if a constitutional right was clearly established at the time. The grievance filed against Defendant Bulerski (Brinkley), SMF-2005-06-1266-21c, only addressed the issue of Plaintiff's security classification. As previously established, Plaintiff has no liberty interest in his security classification, thus, no constitutional violation occurred. Similarly, no retaliation or equal protection claim against her has been adequately pled. Therefore, the Court should grant Defendant Bulerski (Brinkley) qualified immunity.

### III.   RECOMMENDATION

For the reasons indicated above, it is **RECOMMENDED** that Defendants' motion be **GRANTED**, and this case be dismissed. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days

of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474, U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

     Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Date: June 30, 2009                                                     s/Steven D. Pepe
Ann Arbor, Michigan                                        United States Magistrate Judge

### Certificate of Service

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on June 30, 2009.

                                                            s/Jermaine Creary
                                                            Interim Case Manager